IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| DIRECTV, Inc., | § |
| Plaintiff, | § |
| v. | §  No. CIV. _____ |
| JOSEPH HATCHER, LANCE SIMS, BUDDY LACKEY, JAMES DE LA CRUZ, JASHUN BOLDEN and APRIL WEBB | § 1-02CV-181C |
| Defendants. | § |

*Filed stamp: SEP 16 2002, CLERK, U.S. DISTRICT COURT, NORTHERN DISTRICT OF TEXAS*

## PLAINTIFF DIRECTV, INC.'S ORIGINAL COMPLAINT

Plaintiff, DIRECTV, Inc. ("DIRECTV"), by its attorney, complaining of the Defendants herein respectfully sets forth and alleges, upon information and belief, as follows:

### I. PRELIMINARY STATEMENT

1. This lawsuit involves the surreptitious importing, possession and use of illegal devices and equipment designed to intercept and decrypt DIRECTV's protected satellite communications, ultimately allowing for the free viewing of television programming. Federal communication and state laws prohibit the importation, possession and use of the devices and equipment in question. DIRECTV brings this lawsuit seeking damages and injunctive relief against the defendants for the importation, possession and unauthorized access to its satellite communication signals.

### II. FACTS REGARDING DIRECTV'S BUSINESS OPERATIONS & SUPPORTING SATELLITE PIRACY CLAIMS

2. DIRECTV is a California-based company in the business of distributing satellite television broadcasts throughout the United States. Over the company's life, DIRECTV has

invested billions of dollars to develop a satellite system capable of transmitting various digitized video and audio signals to homes and businesses nationwide to be used for entertainment purposes (the "Satellite Programming"). DIRECTV relays digital signals from within the United States up to satellites hovering thousands of miles above Earth. Those signals are then broadcast back to Earth. DIRECTV's Satellite Programming is received through the use of a fixed outdoor satellite dish ("Satellite Dish"), designed to capture satellite signals. The Satellite Dish is connected by cable to an indoor satellite receiver ("Satellite Receiver"), which is then connected by cable to a television monitor.

3. While the signal is beamed from space to various areas and can be received by installing a Satellite Dish, the signal is not usable without paying DIRECTV a fee to use its television broadcast services. To prevent the unauthorized reception and use of DIRECTV's broadcasts by individuals who have not paid for DIRECTV's service, DIRECTV uses encryption technology to digitally scramble the signal making the signal unusable until it is unscrambled. The Satellite Receiver is the component that makes descrambling possible. Each Satellite Receiver contains a removable access card that manages the opening and closing of television channels offered by DIRECTV (the "Access Card"). An access card is identical in size and shape to a credit card, but also holds a computer-type chip that stores and applies the information necessary to unscramble the satellite signals being received through the Satellite Dish. When properly operated, access cards can be electronically programmed by DIRECTV to close or open television channels. It is, however, the programmable nature of these access cards that is the primary basis for this dispute.

4. Once a DIRECTV customer pays a subscription fee, DIRECTV electronically directs the Access Card to unscramble portions of the satellite signal allowing the customer to

view programs on their televisions and/or listen to certain high quality audio programs communicated by satellite. Through the Access Card, DIRECTV can provide many different levels of service to individual customers. Each customer usually pays for the service on a monthly basis. In addition to the programming packages paid for on a monthly basis, certain DIRECTV satellite broadcasts, such as professional sports packages and pay-per-view movies, remain blocked and can be spontaneously purchased on a per-show or per-package basis using the customer's remote control or through a telephone call to DIRECTV. The Access Card records those purchases.

5. DIRECTV's main revenue source is subscriptions paid by properly authorized users of its signals; obviously then, DIRECTV has a significant interest in preventing the unauthorized receipt and use of DIRECTV Satellite Programming. Despite the encryption technology used to protect the DIRECTV signal, there are many individuals within the United States and surrounding foreign countries involved in the development of devices and equipment (including the illegal programming of valid Access Cards) used to surreptitiously pirate DIRECTV's signals (collectively referred to as "Pirate Access Devices"). The use of such Pirate Access Devices commonly provides the user with access to all of DIRECTV's Satellite Programming with no payment to the company.

6. Defendants in this action are residents of the state of Texas. Upon information and belief, each defendant has purchased and used illegal Pirate Access Devices that are designed to permit viewing of DIRECTV's television programming without authorization by, or payment to, DIRECTV.

### *DIRECTV Obtained Records Related to USA CardCleaners*

7.  On or about December 11, 2001, DIRECTV executed Writs of Seizure issued by the United States District Court for the Central District of California upon business named "USA CardCleaners." USA CardCleaners was physically located in the state of New Jersey; but, due to the expansive reach of internet sales, USA CardCleaners was able to conduct business nationwide and across many countries. USA CardCleaners' business enterprise focused on distributing electronic devices primarily designed for the surreptitious interception of satellite communications broadcast by DIRECTV.

8.  DIRECTV's raid revealed information related to USA CardCleaners and its customers. DIRECTV obtained various business records evidencing the ongoing illegitimate enterprise, including orders, invoices, electronic communications, shipping documentation, purchase receipts, credit card receipts and customer lists. Each record confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's Satellite Programming. Moreover, the records plainly evidenced that USA CardCleaners provided its services to actively program and reprogram DIRECTV Access Cards at the request of customers eager to *continue illegal access* to DIRECTV's television programming without payment to DIRECTV. Indeed, among those familiar with the willfully corrupt practice of designing, manufacturing and using electronic devices to misappropriate DIRECTV's Satellite Programming, the phrase "card cleaning" itself describes the removing of security measures from DIRECTV access cards specifically designed to prevent the interception of DIRECTV Satellite Programming. Additionally, because "cleaning" a card repairs damage done by prior illicit programming and use of the card, a business record showing that a customer ordered USA CardCleaners' services typically reflects

the customer's active and successful illegal access to DIRECTV Satellite Programming for a period prior to the creation of the order.

9. USA CardCleaner customers ordinarily placed orders over a website operated by USA CardCleaners, aptly named "usacardcleaners.com." Pertinently, the business records obtained in the raid evidence each Defendant's purchases of Pirate Access Devices from USA CardCleaners, and in reliance on those records and other information, and upon information and belief, DIRECTV brings this lawsuit against the Defendants for their purchase, possession, importing, modification, manufacture, assembly and/or use of Pirate Access Devices.

10. Defendants' activities violate federal telecommunication and wiretapping laws and state statutory and common law. As a result of Defendants' decisions to obtain Pirate Access Devices and the detrimental impact that such activities have on the company, DIRECTV brings this action seeking damages and injunctive relief against Defendants' continued possession and/or use of Pirate Access Devices.

### III. JURISDICTION

11. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

12. This lawsuit is brought pursuant to several federal statutes prohibiting the interception of satellite communications, including the Cable Communications Policy Act of 1984, (47 U.S.C. §§521, *et seq.*)(the "Communications Act"), and the Electronic Communications Policy Act of 1986, (18 U.S.C. §2510, *et. seq.*), for violations of Texas law (TEX. CIV. PRAC. & REM CODE § 123, *et. seq.*), and as an action for injunctive relief and damages for the improper receipt, transmission, and use of satellite programming signals. This Court has jurisdiction of the subject matter to this action under 28 U.S.C. §1331, pursuant to which the

United States District Courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. Moreover, this Court has supplemental jurisdiction over DIRECTV's state law claims pursuant to 28 U.S.C. §1367.

13. This Court has personal jurisdiction over the parties in this action. The activities over which DIRECTV complains and giving rise to this action took place in the state of Texas; more particularly, each of the defendants' acts of violating federal laws and DIRECTV's proprietary rights as distributor of the satellite programming transmission signals took place within the Northern District of Texas. Further, upon information and belief, each defendant resides within the state of Texas; thus, this Court has personal jurisdiction over each defendant.

## IV. VENUE

14. Venue is proper in this the United States District Court for the Northern District of Texas under 28 U.S.C. §§1391(b) as this action arises under the laws of the United States and each defendant resides within the state of Texas. Moreover, a substantial part of the events or omissions giving rise to the claims occurred within the Northern District for the state of Texas (28 U.S.C. §124).

## V. PARTIES

15. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

16. Plaintiff, DIRECTV, is at all times relevant hereto a corporation incorporated under the laws of the State of California. As a major distributor of satellite television programming, DIRECTV has a significant interest in maintaining and securing the integrity of its satellite transmissions of television programming, and in prohibiting the unauthorized reception and use of the same.

17. Defendant, Joseph Hatcher ("Defendant Hatcher"), resides in Abilene, Texas. Upon information and belief, Defendant Hatcher purchased five Pirate Access Devices from USA CardCleaners. Defendant Hatcher placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about March 13, 2001, Defendant Hatcher purchased five printed circuit board devices invoiced as "Bootloaders." Each device is designed specifically to work around security measures used by DIRECTV to prevent unauthorized access to DIRECTV Satellite Programming. The devices were sent through the mail from USA CardCleaners to Defendant Hatcher at his address in Abilene, Texas.

18. Defendant, Lance Sims ("Defendant Sims"), resides in Abilene, Texas. Upon information and belief, beginning on or about March 2001, Defendant Sims purchased one or more Pirate Access Devices from USA CardCleaners. Defendant Sims placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. Specifically, Defendant Sims made the following purchases:

(a) On or about March 7, 2001, Defendant Sims purchased two printed circuit board devices invoiced as "Bootloaders." Each device is designed specifically to work around security measures used by DIRECTV to prevent unauthorized access to DIRECTV Satellite Programming. The devices were sent by Federal Express through the mail from USA CardCleaners to Defendant Sims at his address in Abilene, Texas.

(b) On or about March 15, 2001, Defendant Sims purchased a Pirate Access Device from USA CardCleaners, consisting of a printed circuit board device invoiced as an "SU2 Unlooper", more commonly known as and used as an "unlooper". The same device was specifically designed for use with "SU2 Code" further permitting the illegal programming of

valid DIRECTV access devices. The device was sent by mail to Defendant Sims in Abilene, Texas.

19. Defendant, Buddy Lackey ("Defendant Lackey"), resides in Abilene, Texas. Upon information and belief, Defendant Lackey purchased one or more Pirate Access Devices from USA CardCleaners. Defendant Lackey placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. On or about March 22, 2001, Defendant Lackey purchased a Pirate Access Device from USA CardCleaners, consisting of a printed circuit board device invoiced as an "SU2 Unlooper", more commonly known as and used as an "unlooper". The same device was specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices. The device was sent by Federal Express to Defendant Lackey in Abilene, Texas.

20. Defendant, James De La Cruz ("Defendant De La Cruz"), resides in Abilene, Texas. Beginning on or about March 2001, Defendant De La Cruz purchased four Pirate Access Devices from USA CardCleaners. Defendant De La Cruz placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. On or about March 6, 2001 Defendant De La Cruz purchased four Pirate Access Devices from USA CardCleaners, consisting of printed circuit board devices invoiced as "Bootloaders," designed specifically to work around security measures used by DIRECTV to prevent unauthorized access to DIRECTV Satellite Programming. The devices were sent by mail to Defendant De La Cruz in Abilene, Texas.

21. Defendant, Jashun Bolden ("Defendant Bolden"), resides in Abilene, Texas. Upon information and belief, Defendant Bolden purchased at least two Pirate Access Devices

from USA CardCleaners. Defendant Bolden placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about March 16, 2001, Defendant Bolden purchased two printed circuit board devices invoiced as "Bootloaders." Each device is designed specifically to work around security measures used by DIRECTV to prevent unauthorized access to DIRECTV Satellite Programming. Defendant paid for the device using an electronic "Paypal" account. The devices were sent through the mail from USA CardCleaners to Defendant Bolden at his address in Abilene, Texas.

22. Defendant, April Webb ("Defendant Webb"), resides in Amarillo, Texas. On or about September 2001, Defendant Webb purchased several Pirate Access Devices from USA CardCleaners. Defendant Webb placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. Moreover, the number of purchases made by Defendant Webb suggests that he engaged in the practice of manufacturing and distributing Pirate Access Devices. Specifically, on or about September 5, 2001, Defendant Webb purchased six items from USA CardCleaners invoiced the "Green Smartcard Recovery System." Each "Recovery System" consisted of several devices primarily designed to reprogram DIRECTV Access Cards rendered unusable by DIRECTV security measures or illegitimate use. As advertised, the devices were shipped for use with devices primarily designed for surreptitious interception of DIRECTV Satellite Programming. The devices were sent by mail to Defendant Webb in Amarillo, Texas.

23. Defendants are sometimes hereinafter collectively referred to as "Defendants."

24. Upon information and belief, Defendants received Pirate Access Devices through various mail sources, effectively importing such illegal devices into the state of Texas; each

Defendant has a reason to know that such device is used to illicitly decrypt Satellite Programming. Upon information and belief, Defendants displayed Satellite Programming and such Satellite Programming was displayed without authorization from DIRECTV. Importantly, Defendants' possession and use of Pirate Access Devices provides them access to all television programs transmitted by DIRECTV, including access to all pay-per-view movies, boxing and other special programs, and sports programming at all times. The value of the programs that Defendants were capable of viewing without authorization may easily reach $100,000 in a single year.

25. On information and belief, DIRECTV alleges that Defendants received the Satellite Programming by means including but not limited to: (a) maintaining Satellite Dishes capable of receiving satellite programming on television monitors and further maintaining electronic devices which enable them to unscramble, receive, and exhibit encrypted Satellite Programming transmissions without authorization; and/or (b) by such other means to effectuate the unauthorized reception of the Satellite Programming which are unknown to DIRECTV and known only to Defendants.

## VI. CAUSES OF ACTION

### Count 1 - Damages for Violations of Cable Communications Policy Act
### (47 U.S.C. §605(e)(3)(C))

26. DIRECTV incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

27. DIRECTV alleges on information and belief, that Defendants effected unauthorized interception and receipt of Satellite Programming through use of illegal satellite decoding devices, or by manipulation of the satellite system authorized to carry the Satellite

Programming where Defendants are located, or by such other means which are unknown to DIRECTV and known only to Defendants.

28.    Each of Defendants' acts violate federal law. Defendants, illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception or exhibition of Satellite Programming transmitted by DIRECTV. Moreover, upon information and belief Defendants divulged or published the existence contents, substance, purport, effect or meaning of such satellite communications. Further, upon information and belief Defendants used such communications for their own benefit or for the benefit of others who were not entitled to such communications. Each of these acts is a practice prohibited by 47 U.S.C §605(a).

29.    DIRECTV is a person aggrieved by the Defendants' violations of 47 U.S.C. §605 and is authorized to institute this action against each of the Defendants pursuant to 47 U.S.C. §605 (e)(3)(A).

30.    Defendants' violations of 47 U.S.C. § 605 have injured and will continue to injure DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming, as DIRECTV has been deprived of the benefit of subscribers to the Satellite Programming. DIRECTV is entitled to costs, reasonable attorney's fees actual damages suffered, and profits obtained by Defendants attributable his illegal conduct.

31.    Alternatively, DIRECTV is entitled to statutory damages in an amount not less than $1,000 nor more than $10,000 for each violation of 47 U.S.C. §605(a).

### Count 2 - Damages for Violations of 18 U.S.C. §2511

32.    DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

33. For further cause of action, DIRECTV alleges that Defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV. Defendants further disclosed or endeavored to disclose to others the contents of electronic communications, knowing or having a reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. §2511. Upon information and belief, Defendants further intentionally used or endeavored to use the contents of electronic communications, knowing or having reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C §2511.

34. DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C §2511.

35. Due to Defendants' wrongful conduct, DIRECTV is entitled, under 18 U.S.C. §2520, to the greater of the sum of (1) actual damages suffered by DIRECTV and the profits made by each Defendant as a result of his conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendants acted in violation of 18 U.S.C. §2511.

### Count 3 - Damages for Possession, Manufacture, and/or Assembly of Electronic, Mechanical or Other Device or Equipment
### (18 U.S.C. §2512)

36. DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

37. By way of its third cause of action, DIRECTV alleges that Defendants possessed, manufactured, and/or assembled an electronic, mechanical or other device, knowing or having a reason to know that the design of such device renders it primarily useful for the purpose of the

surreptitious interception of wire or electrical communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce. More particularly, Defendants themselves, or someone at their direction sent and/or received Pirate Access Devices by means of the United States Postal Service or commercial mail carrier.

38.  DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C §2512.

39.  Due to Defendants' wrongful conduct, DIRECTV is entitled, under 18 U.S.C. §2520, to the greater of the sum of (1) actual damages suffered by DIRECTV as a result of his conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendants acted in violation of 18 U.S.C. §2512.

### Count 4 - Damages for Willful Assembly or Modification of Devices or Equipment
### (47 U.S.C. § 605(e)(4))

40.  DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

41.  Upon information and belief, Defendants knowingly, manufactured, assembled, or modified an electronic, mechanical or other device or equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of Satellite Programming, or direct-to-home satellite services, or is intended for any other prohibited activity. Upon information and belief, Defendants actively programmed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECT Satellite Programming. Further, by removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV

Receivers, Defendants engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of Satellite Programming.

42.     Such conduct by each Defendant violates 47 U.S.C §605(e)(4) and such activity entitles DIRECTV to statutory damages in a sum not less than $10,000 or more than $100,000, as the Court considers just for each violation. 47 U.S.C. §605(e)(3)(C)(i)(II).

43.     DIRECTV is a person aggrieved by the Defendants' independent violations of 47 U.S.C. §605 and is authorized to institute this action against the Defendants pursuant to 47 U.S.C. §605 (e)(3)(A).

### Count 5 - Civil Conversion

44.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

45.     By virtue of the conduct set forth above, Defendants have unlawfully converted DIRECTV's property for their own commercial use and benefit.

46.     Such conversion was done intentionally and wrongfully by Defendants to deprive DIRECTV of its proprietary interests and for Defendants' direct benefit and advantage.

47.     Due to Defendants' wrongful conversion of DIRECTV Satellite Programming, DIRECTV suffered damages.

### Count 6 – Interception of Communication
(TEX. CIV. PRAC. & REM. CODE § 123.001, *et. seq.*)

48.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

49.     DIRECTV transmits satellite communications in part by wire or cable. More specifically, the Satellite Dish, receivers and television necessary to utilized DIRECTV's Satellite Programming are connected by wire and cable. Finally, DIRECTV's Satellite

Programming contains information that is obtained and/or perceived by aural acquisition, particularly including all audio communication services that accompany video transmissions.

50. Upon information and belief, Defendants acquired and/or used Pirate Access Devices to intercept, or attempt to intercept, DIRECTV's Satellite Programming information constituting an extraordinary use of satellite and television viewing equipment. Defendants' conduct violates Chapter 123 of the Texas Civil Practices and Remedies Code. As a result of Defendants' conduct, DIRECTV may obtain statutory damages of $10,000 for each occurrence, punitive damages and reasonable attorney fees and costs.

## VIII. REQUEST FOR INJUNCTIVE RELIEF

51. DIRECTV realleges and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

52. DIRECTV further alleges that unless restrained by this Court, the Defendants will continue to receive, intercept, transmit, and exhibit the Satellite Programming, illegally and without authorization, in violation of 47 U.S.C. §605.

53. The violations of 47 U.S.C. §605 set forth above have caused and will continue to cause DIRECTV irreparable harm.

54. DIRECTV cannot practicably determine the loss of subscribers and lost revenues resulting from the Defendants' unlawful conduct. In addition to diminishing DIRECTV's revenues, the Defendants' unlawful conduct injures DIRECTV's reputation and goodwill as well as its ability to attract and finance the future acquisition, production, and distribution of quality programming, thereby impairing DIRECTV's ability to enhance its future growth and profitability. DIRECTV has no adequate remedy at law to redress the violations set forth above.

55. Further, DIRECTV is entitled to preliminary and other equitable or declaratory relief as may be appropriate under the circumstances in accordance with 18 U.S.C. §2520(b)(1). DIRECTV requests that Defendants be directed to cease the use of any and all Pirate Access Devices, relinquish all such devices to DIRECTV, and not engage in such conduct in the future.

## IX. PRAYER

WHEREFORE, Plaintiff, DIRECTV, INC., prays that this Court enter judgment in its favor and against Defendants in the form as follows:

a. Declare that Defendants' importing, exporting, modification, possession of illegal access cards or other illegal devices or equipment, unauthorized interception, reception, and exhibition of DIRECTV's electronic communications, or its assistance in the performance of such unauthorized actions, is a violation of 47 U.S.C. §605, 18 U.S.C. §§2511 & 2512, and TEX. CIV. PRAC. & REM. CODE §123.002.

b. Award DIRECTV statutory damages in the amount of $10,000.00 for each violation of 47 U.S.C. §605, plus an additional $100,000.00 for each violation pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II); alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendants' violations of 47 U.S.C. §605;

c. Alternatively, award DIRECTV statutory damages in the amount of the greater of $10,000 or $100 per day for each day Defendants violated 18 U.S.C. §2511 and/or §2512, or alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendants' violations of 18 U.S.C. §§2511 or 2512;

d. Alternatively, award DIRECTV statutory damages of $10,000 for each violation of TEX. CIV. PRAC. & REM. CODE §123.002;

e. In accordance with 47 U.S.C. §605(e)(3)(B)(i) and 18 U.S.C. §2520(b)(1), enjoin Defendants, and all persons in active concert or participation with any of them from (i) possessing illegal access cards or other illegal devices or equipment (ii) interfering with DIRECTV's proprietary rights, (iii) intercepting, receiving, divulging, or displaying DIRECTV's Satellite Programming without prior written consent of DIRECTV; and (iv) acting in further violation of the above-described statutes;

f. That this Court award DIRECTV punitive damages as provided by statutory law;

g.   That this Court award DIRECTV its costs, including reasonable attorney's fees, prejudgment and post-judgment interest, and

h.   Such other relief to which DIRECTV may be entitled.

DATED this 13th day of September 2002.

                                          Respectfully Submitted,

                                          **GREER, HERZ & ADAMS, L.L.P**

                                          By: *Joe A C Fulcher*
                                          Joe A. C. Fulcher
                                          Attorney-in-charge
                                          State bar no. 07509320
                                          2525 South Shore Blvd, Suite 203
                                          Houston, Texas 77573
                                          (409) 797-3200 (telephone)
                                          (409) 766-6424 (telecopier)

OF COUNSEL:

**Joseph R. Russo, Jr.**
Tx. State Bar No. 24002879
GREER, HERZ & ADAMS, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (telephone)
(409) 766-6424 (telecopier)